IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEPHEN DEVARY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 12-150-GMS |
| | ) |
| DR. DESROSIERS, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

### **I. INTRODUCTION**

The plaintiff, Stephen DeVary ("DeVary"), a prisoner housed at the James T. Vaughn Correctional Center, Smyrna, Delaware filed this lawsuit pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and was granted leave to proceed *in forma pauperis*. (D.I. 9.)

Before the court are several motions filed by DeVary and motions for summary judgment filed by the defendants. (D.I. 125, 127, 129, 138, 144, 147, 160.)

### **II. FACTUAL AND PROCEDURAL BACKGROUND**

The case proceeds on the second amended complaint (D.I. 113) raising medical needs claims pursuant to 42 U.S.C. § 1983 against the defendants Dr. Derosiers ("Dr. Derosiers"), Correct Care Solutions ("CCS"), and Sean Moore ("Moore").[1]

Medical records indicate that on November 27, 2012, DeVary presented for a follow-up after undergoing an October 10, 2012 surgical repair of a right shoulder dislocation. (D.I. 76, ex. A.) History indicated that a problem had developed two months prior to the visit and that DeVary has had a right shoulder problem for several years. (D.I. 76, ex. B.) DeVary underwent

---

[1]The court dismissed medical negligence claims on September 3, 2013. (D.I. 112).

an arthroscopic repair in 2003 and, at that time, the surgeon noted a right shoulder anterior dislocation from a bike accident and that the shoulder had dislocated about ten times since then. (*Id.*) DeVary also stated that his shoulder had dislocated many times over the years. (*Id.*)

Once incarcerated, DeVary's shoulder dislocated on August 24, 2011. (D.I. 97, ¶ 3.) He was seen by medical, and Dr. Desrosiers ordered a nurse to send DeVary to the emergency room at Kent General Hospital. (*Id.* at ¶ 4.) However, before the hospital was called, DeVary was able to reset the shoulder himself, and he was given a sling, muscle rub, and pain medication. (*Id.*) The shoulder dislocated again that day, and DeVary was seen by medical staff and given ice every twelve hours as well as pain medication. (D.I. 22; D.I. 97, ¶ 9.) The treatment continued for five days, but provided little relief. (D.I. 97, ¶ 10.c.) Approximately five days later, DeVary relocated his shoulder, and his shoulder was x-rayed. (*Id.* at ¶¶ 14-15.) In September 2011, DeVary was seen for an orthopaedic consultation by Dr. Gabriel Lewullis ("Dr. Lewullis") who recommended physical therapy prior to surgical intervention. (D.I. 97, ¶ 17; D.I. 148, ex. A.)

DeVary received physical therapy on the right shoulder on October 20, 2011 and October 27, 2011; but he refused to attend physical therapy on November 22, 2011 and December 6, 2011. (D.I. 148, ex. A.) DeVary was again evaluated by Dr. Lewullis on February 21, 2012, who again recommended physical therapy prior to surgery. (*Id.*) DeVary returned to physical therapy on March 22, 2012, refused to attend physical therapy on April 5, 2012, asked to resume physical therapy on April 17, 2012, and refused further physical therapy on April 19, 2012. (*Id.*) DeVary was prescribed pain medication which helped to a certain extent. (D.I. 97, ¶¶ 26-32.) As discussed above, surgery was performed in October 2012.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a

3

reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

## IV. DISCUSSION

The defendants move for summary judgment on the grounds that: (1) DeVary failed to present evidence of an Eighth Amendment violation; (2) DeVary failed to present an expert opinion to support his constitutional claim; and (3) DeVary presented no evidence that CCS maintained a policy or custom to deprive him of his constitutional rights. DeVary opposes the motions on the grounds that: (1) the defendants employed the wrong standard of law given that he was a pretrial detainee at the time of the alleged constitutional violations and not a sentenced inmate; (2) there was unnecessary delay in treating a serious injury; and (3) CCS refused to comply with discovery regarding its policies or customs.[2]

---

[2]On September 3, 2013, the court entered a scheduling order that provided for all discovery to be initiated so that it was completed on or before February 28, 2014. (D.I. 112.) In his sur-reply, dated July 22, 2014, DeVary seeks additional time to complete discovery. The request is untimely, given the deadline previously entered by the court. The court also notes that on December 27, 2013, DeVary filed a motion for sanctions claiming the defendants failed to respond to his interrogatories. (D.I. 127.) DeVary did not provide the court with the complete response by the defendants. Hence, the court is unable to act on his motion. Regardless, as will be discussed, no reasonable jury could find that the defendants violated DeVary's constitutional rights.

4

## A. Medical Needs

The court first addresses the issue of whether the defendants utilized the appropriate standard of law in moving for summary judgment. The Due Process Clause of the Fourteenth Amendment affords a pretrial detainee protection for medical needs claims. *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). When evaluating whether a claim for inadequate medical care by a pretrial detainee is sufficient under the Fourteenth Amendment, the Third Circuit has found no reason to apply a different standard than that set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). To evaluate a medical needs claim, the court determines if there is evidence of a serious medical need and acts or omissions by prison officials indicating deliberate indifference to those needs. *Id.* at 582.

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05. However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). Moreover, allegations of medical malpractice are not sufficient to establish a constitutional violation. *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is

5

insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

Although the defendants employed the medical needs standard for convicted inmates as opposed to a pretrial detainee, there is no difference in the analysis of the two. Hence, their analysis does not serve to defeat the pending motions for summary judgment.

The record reflects that DeVary has a serious medical need given his longstanding right shoulder issues. The record further demonstrates that DeVary was provided with ongoing care. When DeVary's shoulder dislocated on August 24, 2011, he received treatment in the form of ice packs and pain medication. The treatment continued for five days before DeVary relocated the shoulder, followed by a shoulder x-ray. DeVary's condition continued to be monitored and treated, culminating in shoulder surgery on October 10, 2012.

DeVary argues that the defendants violated his constitutional rights due to delay in treatment and the type of treatment rendered. He bases this on the fact that Dr. Derosiers ordered a transfer to the emergency room when DeVary first dislocated his shoulder on August 24, 2011, but Dr. Derosiers did not order the transfer again when the shoulder dislocated a second time on the same day. Instead, DeVary was treated with ice and pain medication. The record does not reflect that DeVary's condition was ignored for five days. Instead, it reflects that DeVary received treatment, albeit not to his liking. If anything, at most, perhaps medical staff were negligent in not transporting DeVary to the hospital. They were not, however, deliberately indifferent to his condition given that the treatment was provided.

In addition, the record is replete with documentation showing that DeVary was provided with medical care at the prison, referrals to outside specialists, treatment by outside specialists,

diagnostic testing, and surgery. The record further reflects that DeVary was offered and received physical therapy, yet he refused it on several occasions.

The record does not support a finding that defendants were deliberately indifferent to DeVary's medical needs or that they violated DeVary's constitutional rights. Instead, the record indicates that steps were taken to see that DeVary received constitutionally adequate medical care. Therefore, the court will grant the defendants' motions for summary judgment.

## B. Policies and/or Customs

With regard to CCS, in order to establish that it is directly liable for any alleged constitutional violations, DeVary "must provide evidence that there was a relevant [] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584 (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Because the court has concluded that there was no violation of DeVary's constitutional rights under the Eighth Amendment, CCS cannot be liable based on the theory that it established or maintained an unconstitutional policy or custom responsible for violating DeVary's's rights. *See Goodrich v. Clinton Cnty. Prison*, 214 F. App'x 105, 113 (3d Cir. 2007) (unpublished) (policy makers not liable in prison medical staff's alleged deliberate indifference to prisoner's serious medical needs where, given that there was no underlying violation of prisoner's rights, policy makers did not establish or maintain an unconstitutional policy or custom responsible for violating prisoner's rights). In light of the foregoing, the court will grant the motion for summary judgment as to the claims raised against CCS.

7

## V. CONCLUSION

For the above reasons, the court will: (1) deny as moot DeVary's pending motions (D.I. 125, 127, 129, 138, 160); and (2) grant the defendants' motions for summary judgment (D.I. 144, 147).

An appropriate order will be issued.

_____
UNITED STATES DISTRICT JUDGE

_____Sept 8_____, 2014
Wilmington, Delaware

8